### BENJAMIN W. PETTIS *vs.* AUSTIN W. KELLOGG & others.

Where personal property mortgaged was described as "all the staves I have in Monterey, the same I had of Moses Fargo;" and it appeared, in evidence, that the mortgagor had no staves in Monterey, but had a quantity in the adjoining town of Sandisfield, near the boundary of Monterey, which he had of Moses Fargo, it was held that the first part of the description might be rejected, as false, and that the remainder was sufficient to pass the property.

If a mortgage of personal property is made as security for the payment, "according to its tenor," of a promissory note, payable at a day certain, which has passed, the condition must be understood to be the payment of the note in its then existing state.

The owner of a quantity of staves made an agreement to sell and deliver them and that when they were all delivered, the purchaser should give good security therefor; the purchaser, after delivery of a portion of the staves, and paymen

of a portion of the purchase money, made a mortgage of all the staves. It was held, that the property in the staves did not vest in the purchaser, until the delivery was completed, and the security given; that the mortgage was therefore void, so far as respected the staves not then delivered; and that it was not rendered valid by the subsequent completion of the delivery and giving of security, as against attachments made still later by the creditors of the original owner.

It is no sufficient objection to the validity of a demand, made by a mortgagee of personal property, upon an officer attaching the same as the property of a mortgagor, that the demand is signed by attorney; or that it states a claim of title under a pledge, as well as under the mortgage.

· This was an action of trespass for taking and carrying away a quantity of staves, the property of the plaintiff. The defendants pleaded the general issue, with a specification of defence that the defendant Kellogg, as deputy sheriff, on the 10th of January, 1850, attached the staves, as the property of Phineas Pettis, on a writ sued out against said Phineas, by Henry K. Buel and others; and the other defendants justified as his servants.

At the trial in the court of common pleas, before *Byington*, J., the plaintiff put in evidence a mortgage, given to him by Phineas Pettis, on the 24th of December, 1849, and recorded the same day, of the property in question, describing it as " all the staves I have in Monterey, the same I had of Moses Fargo," and conditioned to pay a note therein mentioned, according to its tenor, which note, dated the 27th of May, 1848, and payable to Eunice Pettis, or bearer, in six months from its date, the plaintiff also put in evidence, and offered evidence that he owned the note at the time the mortgage was given.

The defendants objected that the mortgage was void, because the condition was impossible, namely, to pay a note, according to its tenor, which was overdue. This objection was overruled.

They also objected that the mortgage was void for uncertainty in the description of the property. It appeared in evidence, that the said Phineas, at the time he gave the mortgage, had no staves in Monterey, but had staves which he had bought of Moses Fargo, and which were then in Sandisfield, near the boundary line between the two towns. The court ruled, that although the description was erroneous in mention-

ing the property as situated in Monterey; yet, as it was in other respects correct, in describing the staves, as bought of Moses Fargo; if, by such description, the property was capable of being identified, and was so identified by testimony, the description was sufficient to pass the property.

The defendant then objected that the said Phineas had no such property in the staves, that he could make a valid mortgage of them at the time this mortgage was made; that though he had contracted for the purchase, the title and property had not vested in him. On this point, after the plaintiff had called Phineas Pettis as a witness, the defendant called Moses Fargo, who testified, that prior to the date of the mortgage, he sold Phineas Pettis a lot of staves, and was to deliver them to him; and when delivered, Phineas was to satisfy him with good security; that he delivered two loads, on the 21st and 22d of December, 1849; that he drew them from Sandisfield to New Marlborough, where Phineas Pettis lived; that Phineas was to pay something on the delivery of the first load, and did accordingly pay then eight dollars on account of the staves generally; that after the 24th of December, the residue of the staves were delivered; and when all were delivered, Phineas settled for them by giving satisfactory security; that Phineas, at the time of the contract, examined the staves, which were then lying in one heap; and, after examining them, made the contract before stated. The staves were all included in the mortgage, as well those delivered before, as those deli vered after, the 24th of December; but those only were attached, which were delivered after that day, and they were not attached until after security was given for payment of them to Fargo, to his acceptance. The defendant objected, that the staves had not been delivered at the time of making the mortgage, and that the property remained in Fargo; and that, until satisfactory security was given to him for the payment, Phineas had no such property in the staves, that he could make a valid mortgage of them. But the court ruled, that if the jury found the facts to be as testified to by Fargo, then Phineas had such an interest in the staves, that he might make a valid mortgage of them, as against the defendants.

The plaintiff then introduced a written notice and demand, signed in his behalf by his attorney, dated the 1st of February, 1850, and duly served on the defendant Kellogg, on the same day. In this notice, the plaintiff stated that he claimed to hold the property, by virtue of the mortgage above mentioned, and also by virtue of a pledge from the mortgagor. The defendant objected to the sufficiency of the notice among other reasons, because it was signed by attorney, and because the claim to hold the property by virtue of the pledge was ineffectual. But the judge ruled that the notice was sufficient.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*C. N. Emerson*, for the defendants, cited, to the point that the property in question was not sufficiently described in the mortgage, *Bullock* v. *Williams*, 16 Pick. 35; *St.* 1843, *c.* 72, § 2; *Whiting* v. *Dewey*, 15 Pick. 434; *Tyler* v. *Hammond*, 11 Pick. 212; *Moore* v. *Magrath*, Cowp. 9; 2 Bl. Com. 381; *Cutler* v. *Tufts*, 3 Pick. 272; *Worthington* v. *Hylyer*, 4 Mass. 205; and to the point that the mortgagor had no property in the staves, which he could convey, at the time of giving the mortgage, *Jones* v. *Richardson*, 10 Met. 481, 493; 2 Kent Com. (6th ed.) 494; *Hanson* v. *Meyer*, 6 East, 614; *Barrett* v. *Pritchard*, 2 Pick. 516; *Hussey* v. *Thornton*, 4 Mass. 405; *Marston* v. *Baldwin*, 17 Mass. 606; *Barrow* v. *Coles*, 3 Campb. 92; *Reed* v. *Upton*, 10 Pick. 522; *Whitwell* v. *Vincent*, 4 Pick. 449.

*I. Sumner*, for the plaintiff, cited, to the point of the sufficiency of the description, *Harding* v. *Coburn*, 12 Met. 333; *Winslow* v. *Merchants Ins. Co.* 4 Met. 306; 1 Greenl. Ev. § 288; *Barry* v. *Bennett*, 7 Met. 354; and to the point that the mortgagor had such a title in the staves, at the time of making the mortgage, as to give effect to the latter, *Riddle* v. *Varnum*, 20 Pick. 280; *Potter* v. *Washburn*, 13 Verm. 558.

DEWEY, J. The title of the plaintiff is that of mortgagee, by virtue of a mortgage from Phineas Pettis, bearing date December 24th, 1849, which mortgage was duly recorded on the same day. Is this mortgage a valid one, and effectual to pass the property to the plaintiff in the articles now in controversy?

1. It is objected to the validity of this mortgage that the articles are not sufficiently described in the mortgage. As to the objection arising from the generality of the description, " all the staves I had of Moses Fargo," it has often been a sub-ject of consideration by this court, and is now the well settled doctrine, that it is no sufficient objection that the articles are thus generally described. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306 ; *Harding* v. *Coburn.* 12 Met. 333. The further objection, that this mortgage must be confined to the staves of the plain-tiff that were then in the town of Monterey, and that it can not be held to embrace those that were in the adjoining town of Sandisfield, though near the dividing line between that town and Monterey, is one of more difficulty, and to be met only by taking the rule of construction often applied to conveyances of real estate, namely, that of rejecting a particular description which is clearly false, in order to give effect to other descrip-tive words, which of themselves sufficiently describe the object intended to be conveyed. The entire description is this : "All the staves I have in Monterey, the same I had of Moses Fargo." Now it is agreed that the mortgagor had no staves in Monterey, but the staves he had of Moses Fargo were in the adjoining town of Sandisfield. If we reject this false recital as to Monterey, we have yet left a full and sufficient description of the articles, namely, "all the staves I had of Moses Fargo." True, you must go out of the description and show by other facts, which were the staves that the mortgagor purchased of Moses Fargo ; and this would have been equally necessary, had the whole description been correct and truly recited. It seems to us, that this is one of those cases, where the property may be held sufficiently described after rejecting the false recital, and one where, upon sound principles, such false recital may be rejected, to give effect to the contract.

2. The objection taken at the trial that the mortgage was invalid, because the condition was impossible, it being to pay a promissory note, " according to its tenor," when the note was payable at a day certain, which had already past, is not farther urged. It could not avail ; as the obvious purpose of the parties was to secure the payment of the note thus de-

scribed, which, on its face, was a note overdue; and the condition of the mortgage must be understood to have been the payment of the note in its then state, which was virtually the same as a note payable on demand.

3. It is then further objected that, at the time of the execution of the mortgage, the mortgagor was not the owner of the property attempted to be conveyed in mortgage, and that his interest therein afterwards acquired cannot avail the mortgagee, so as to enable him to hold the same under the mortgage. This subject has recently been fully considered by this court, and the result stated in the opinion of the court, in the case of *Jones* v. *Richardson*, 10 Met. 481, where it was held, that a mortgage of goods, which the mortgagor does not own when the mortgage is made, though he afterwards acquire them, is void as against his attaching creditors. The further inquiry, upon this point, is as to the facts to which this legal principle is now sought to be applied. These are stated in the testi· mony of Moses Fargo, from which it appears, that the property now in controversy had not been delivered to the mort· gagor at the date of the mortgage; that it was parcel of a quantity of staves that he had contracted to sell and deliver to the mortgagor; but that when delivered, the vendee was to give him good security therefor. Some portion of the staves, not now the subject of controversy and not attached, had been delivered to the vendee. In this state of things, the mortgage was made. There had not been, in the opinion of the court, at this time, a transfer of the property. It was only an executory contract between Fargo and the mortgagor, as to the staves; the property in Pettis being dependent upon the delivery yet to be made by Fargo, and upon the condition of payment or security for the same, to be made by the vendee. Until this took place, the property was in Fargo. The question of property in these articles may be tested, by supposing a creditor of Phineas Pettis to have attached the same as his property, while in Sandisfield, and yet undelivered to Pettis. Could not Fargo have asserted a paramount claim to this property? Most clearly he might. We do not perceive that the delivery, after the execution of the mortgage, and the giving of

39 *

satisfactory security for the payment of the articles, can operate retrospectively, and give effect to a mortgage previously executed. The acquisition of title, by the delivery and payment, or giving security, presents no stronger case than any other subsequent purchase of articles described in the mortgage, but not then owned by the mortgagor, which in the case just cited was held insufficient. It would have been competent for the parties, by a new delivery and pledge after the articles became the property of Phineas Pettis, to have given Benjamin W. Pettis a valid lien upon them as security for the same debt as that described in the mortgage; but in such case the party would hold under the lien. It was said in the argument, that such was the case here, but that does not appear in the bill of exceptions. It will be fully open to the defendants on a new trial.

4. We perceive no valid objection to the form of the notice given by the mortgagee to the attaching officer. That the plaintiff claimed also, in his notice, that he had a lien by a pledge as well as a mortgage, did not vitiate the notice.

But the ruling, that the property was sufficiently vested in the mortgagor to authorize him to convey the same in mortgage, upon the facts stated in the report of the case, was erroneous, and to that extent the *Exceptions are sustained.*